# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FRANCINE E. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-0217-CVE-SAJ |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary

Judgment and Brief in Support (Dkt. # 15).  Defendant[1] argues that plaintiff has not stated a prima

facie case of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII").  Plaintiff

responds that she was terminated in retaliation for filing employment discrimination claims against

---

[1]     Plaintiff's complaint and the Court's docket sheet identify the defendant as the United States
Postal Service ("Postal Service"), but both parties refer to the Postal Service and John E.
Potter ("Potter") as separate defendants.  Under 42 U.S.C. § 2000e-16, the proper defendant
in this case is the Postmaster General, Potter.  Id. (employment discrimination claims against
Postal Service should be filed against "the head of the department, agency, or unit");
Johnson v. United States Postal Service, 861 F.2d 1475 (10th Cir. 1989) (Postmaster General
is proper party in employment discrimination claim against Postal Service).  However,
defendant has not filed a motion to substitute parties and, instead, has treated plaintiff's
complaint as if it alleged claims against the Postal Service and Potter.  Whether the docket
sheet lists the Postal Service or Potter as the defendant, it is clear that either would be
entitled to summary judgment and the issue is moot.  To maintain consistency with
plaintiff's complaint and the docket sheet, the Court will refer to the Postal Service as the
defendant even though the real party in interest is Potter.

the Postal Service and for testifying in support of a Postal Service employee in employment discrimination litigation.[2]

## I.

Plaintiff Francine E. Miller ("Miller") was employed by the Postal Service, and she was dismissed by the Postal Service on October 15, 1999 for repeated absences.  She appealed her termination to the Merit Systems Protection Board ("MSPB") and, on March 3, 2000, she reached a settlement with the Postal Service before the appeal was resolved.  The Postal Service agreed to convert the dismissal into a suspension and permitted Miller to resume her employment.  The parties included a last chance agreement ("LCA") in the settlement agreement, which permitted the Postal Service to terminate Miller if she had more than two "unscheduled absences" within any quarter over the following 18 months.  Dkt. # 15, Ex. 1.  The LCA defined "unscheduled absence" as "any absence not scheduled and approved twenty-four (24) hours in advance of [Miller's] scheduled reporting time and includes, but is not limited to, tardiness, short tour, emergency sick or annual leave, leave without pay, and failure to report/remain as directed or scheduled for overtime or holiday work."  Id. at 2.  Miller also waived her right to appeal to the MSPB if she was later terminated for violating the LCA.  Id. at 2. ("The Appellant . . . waives her right to appeal any removal action that is based on a charge related to attendance and/or breach of this agreement to the [MSPB]").

_____

[2]      Plaintiff has filed an unauthorized sur-reply in opposition to defendant's motion for summary judgment (Dkt. # 24) and a redacted version of the same document (Dkt. # 25). Although plaintiff is proceeding pro se, she must still abide by the Federal Rules of Civil Procedure and, in order to file a sur-reply, plaintiff must request permission from the Court to file supplemental briefing.  LCvR 7.2(h).  Plaintiff did not request leave of court to file a sur-reply.  The sur-reply (Dkt. # 24) and redacted sur-reply (Dkt. # 25) are **stricken** and the Court will not consider them when ruling on defendant's motion.

During a three-month period between March 4, 2001 and June 3, 2001, Miller had five unscheduled absences totaling 56 hours of missed work, and the Postal Service sent her a letter on June 26, 2001 notifying Miller it would begin procedures to terminate her employment.  Miller disputed the Postal Service's allegations and asserted that all of the absences were approved.  Miller requested sick leave for March 12, 2001 and, even though her request was subsequently approved, she did not submit her request until March 12.  Miller claimed that she was approved for sick leave on March 19 and 20, 2001, because she was in a car accident.  However, she did not obtain approval 24 hours before taking leave and this was considered an unscheduled absence under the LCA.  Miller requested sick leave for March 26 and 27, 2001, but records show that she did not submit her request until March 26, 2001.  Dkt. # 21, at 29.  Miller missed work on May 17 and 18, 2001, but she did not present medical documentation in support of her request until May 18, 2001.  Finally, Miller was absent on May 28, 2001, but she did not submit a physician's letter authorizing the absence until June 26, 2001.  The Postal Service found that all of the absences were unscheduled, even if subsequently approved, because Miller did not request leave 24 hours in advance for any of these absences.  Based on Miller's violations of the LCA, the Postal Service terminated her employment on August 10, 2001.

Miller filed a complaint with the MSPB alleging that the Postal Service discriminated against her on the basis of race and that the Postal Service retaliated against her for filing previous charges with the Equal Employment Opportunity Commission ("EEOC").  The MSPB dismissed her complaint without prejudice, because Postal Service regulations required that complaints alleging discrimination be filed with the EEOC rather than the MSPB.  Miller refiled her appeal to the MSPB on January 25, 2002 challenging the factual allegations supporting her termination, but the MSPB

3

found that in the LCA Miller waived her right to appeal her termination. Dkt. # 15, Ex. 4.  Therefore, the MSPB determined that it lacked jurisdiction and dismissed Miller's appeal.

Miller filed a previous lawsuit in the Northern District of Oklahoma asking the district court to review the MSPB's decision and her allegations of employment discrimination.  The district judge found that Miller waived her right to appeal her termination to the MSPB and the waiver was enforceable.  Miller v. Roberts, 04-CV-275-HDC-PJC, Dkt. # 27, at 2 (N.D. Okla. April 1, 2005) ("The Court specifically finds that last chance agreements are valid and enforceable contracts which the Courts do not disturb in the absence of a showing of bad faith by the employee.").  The court also found that it lacked subject matter jurisdiction to hear plaintiff's claims under Title VII, because she failed to exhaust her administrative remedies with the EEOC before filing her lawsuit.  Id. at 2-3.

After her lawsuit was dismissed, Miller filed an EEOC charge against the Postal Service, alleging that she was fired in retaliation for engaging in protected activity.  Specifically, she alleged that she testified as a witness in Brown v. United States Postal Service, 08-CV-824-CVE (N.D. Okla.) ("Brown"), and the Postal Service retaliated against her for supporting another employee's claims of gender discrimination.   On June 8, 2005, the EEOC denied her claims of unlawful discrimination.  The EEOC rejected Miller's argument that her absences were not a valid basis to terminate her employment because, under the LCA, her absences were unscheduled.  Dkt. # 15, Ex. 6, at 5-6.  Miller could not carry her burden to produce evidence showing a causal connection between her protected activity and the adverse employment action, and her claim of retaliation was rejected.  Miller appealed the EEOC's decision and the initial decision to deny Miller's claim of retaliation was affirmed.  The appeal was final on November 15, 2006 and the EEOC notified Miller

that she had 90 days to file a lawsuit in federal district court.  Miller filed her lawsuit in this Court

on April 18, 2007, alleging a claim for retaliatory discharge under Title VII.

## II.

Although defendant's motion is styled as a motion to dismiss, both parties rely on evidence

outside of the pleadings to support their arguments.  The Court finds that defendant's motion should

be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56 rather than a motion to

dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  In this case, defendant's motion

put plaintiff on notice that it was seeking summary judgment, and no additional notice to the parties

is required for the Court to consider evidence outside of the pleadings when ruling on defendant's

motion.  Marquez v. Cable One, Inc., 463 F.3d 1118 (10th Cir. 2006).  In addition, plaintiff's

response demonstrates that she was aware defendant's motion would be treated as one for summary

judgment, because she attached 47 pages of evidentiary materials to her response.  Building and

Constr. Dept. v. Rockwell Int'l Corp., 7 F.3d 1487, 1494 (10th Cir. 1993) (notice requirement

satisfied when moving party states it is seeking summary judgment and opposing party responds by

attaching evidence outside the pleadings to the response).

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp.

v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that plaintiff can not state a prima facie case of retaliation, because there is no causal connection between her protected activity and the adverse employment action.[3]  Plaintiff

---

[3]      Plaintiff's appeal was denied by the EEOC on November 15, 2006, but she did not file her lawsuit in this Court until April 18, 2007.  It is clear that plaintiff's lawsuit was filed more than 90 days after her appeal was denied, and defendant could have sought dismissal on the ground of untimeliness.  However, defendant has waived this issue and the Court may not rely on the untimeliness of plaintiff's lawsuit as a basis to dismiss her employment discrimination claim.  Mosley v. Pena, 100 F.3d 1515, 1517 (10th Cir. 1996) ("Compliance with the filing requirements of § 2000e-16(c) 'is not a jurisdictional prerequisite, rather it is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling.'").

responds that she can produce evidence establishing a prima facie case of retaliation, because she can show that the Postal Service lacked just cause to terminate her employment and the stated reason for discharge was pretextual.  Consistent with Supreme Court and Tenth Circuit precedent, the Court will construe plaintiff's pro se pleadings liberally when ruling on defendant's motion for summary judgment.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002).  "Although '[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,' . . . 'pro se parties [must] follow the same rules of procedure that govern other litigants.'" Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)).

Under Title VII, it is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged workplace discrimination.  42 U.S.C. § 2000e-3(a).  To prove a prima facie case of retaliation, plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the opposition and the adverse action.  Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004).  The law is clear that reporting workplace discrimination to the EEOC is protected behavior.  Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999); McCue v. State of Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999).  An employee may establish causation by showing that the adverse employment action occurred soon after the protected activity.  Annett v. University of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004); Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982).  "Unless there is a very close temporal proximity between the protected activity and the

7

retaliatory conduct, the plaintiff must offer additional evidence to establish causation." O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001).

In this case, the Postal Service does not challenge plaintiff's assertion that she engaged in protected activity or that she suffered an adverse employment action.  The evidence shows that plaintiff has filed numerous EEOC complaints[4] and this is protected activity for purposes of a retaliation claim under Title VII.  Anderson, 181 F.3d at 1178 ("By filing an EEOC claim, [the plaintiff] engaged in protected activity.").  It is also clear that plaintiff's employment was terminated on August 10, 2001, and this was an adverse employment action under Title VII.  Therefore, plaintiff can establish the first two elements of a prima facie case of retaliation.

However, plaintiff has not produced any evidence showing a causal connection between her protected activity and her termination.  Plaintiff's evidence does not support her claims that the Postal Service lacked justification for terminating her employment.  In fact, the evidence shows that the absences relied on to support plaintiff's termination were unscheduled absences under the LCA. Although plaintiff obtained subsequent approval for her absences, the Postal Service appropriately treated the absences as unscheduled under the LCA, because she did not obtain approval at least 24 hours before taking leave.  Plaintiff is correct that her attendance violations were not "normal attendance violations as set out in the guidelines of attendance control" but, under the LCA, plaintiff could be terminated for unscheduled rather than unapproved absences.  Dkt. # 21, at 4.  The evidence supports the Postal Service's basis for terminating plaintiff's employment, and this does

---

[4]      The EEOC noted that its investigative file on plaintiff contained 32 complaints of discrimination filed by plaintiff during her tenure with the Postal Service. Dkt. # 15, Ex. 6, at 3.

not support an inference that the Postal Service was looking for a way to fire plaintiff based on her participation in protected activity.

Most importantly, plaintiff has not produced any evidence showing a temporal connection between her termination and her protected activity.  Although plaintiff may have filed EEOC complaints against the Postal Service, she has not established a temporal proximity between her EEOC filings and her termination.  See Fye v. Oklahoma Corp. Comm'n, ___ F.3d ___, 2008 WL 509371 (10th Cir. Feb. 27, 2008) (period of two weeks between protected activity and termination was sufficient to establish causal connection); Haynes v. Level 3 Communications, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006) (plaintiff's termination over seven months after engaging in protected activity was insufficient to prove causation for a retaliation claim).  Construing the evidence in plaintiff's favor, plaintiff settled her appeal to the MSPB on March 3, 2000 and she was terminated on August 10, 2001.[5]  This is not evidence of a "very close temporal proximity between the protected activity and the protected conduct," and plaintiff must produce additional evidence to

---

[5]     Construing plaintiff's allegations broadly, it appears that her appeal of her initial termination involved claims of unlawful discrimination and this could constitute protected activity.  The Court can find no other evidence that plaintiff filed any charges or claims of discrimination against the Postal Service between March 3, 2000 and August 10, 2001.

support the element of causation.[6]  O'Neal, 237 F.3d at 1253.  Plaintiff's evidence consists solely of her allegations that the Postal Service lacked just cause to terminate her employment but, as the Court has discussed, this is not sufficient to establish a causal connection between plaintiff's protected activity and her termination.  Plaintiff has not established a prima facie case of retaliatory discharge, and defendant is entitled to summary judgment on this claim.

Construing plaintiff's complaint broadly, she could also be attempting to state a claim under 5 U.S.C. § 7513 or 18 U.S.C. § 1001.  Plaintiff did not address these statutes in her response but, even if she had, neither statute would permit her to obtain relief from the Postal Service.  Plaintiff cites § 7513 in her complaint, but this statute simply permit a person to appeal a decision by the MSPB.  As noted above, plaintiff waived her right to appeal her termination to the MSPB, and this finding was upheld in a previous lawsuit filed by plaintiff.  Miller v. Roberts, 04-Cv-275-HDC-PJC, Dkt. # 27 (N.D. Okla. April 1, 2005).  The Court will not review that finding here.  To the extent that plaintiff attempts to state a claim under 18 U.S.C. § 1001, the Court notes that § 1001 is a federal criminal statute and it can not be used as the basis for a civil lawsuit.  Andrews v. Heaton, 483 F.3d 1070 (10th Cir. 2007) (federal criminal statutes, including § 1001, "do not provide for a private right of action and are thus are not enforceable through a civil action.").

---

[6]     Plaintiff has produced evidence that she testified in Brown on May 9, 2001, and testifying in a Title VII lawsuit can be protected activity.  McGowan v. City of Eufala, 472 F.3d 736, 744 (10th Cir. 2006).  However, the decision to terminate plaintiff was made by R.L. Mask ("Mask"), and there is no evidence that he was involved in Brown or was aware of plaintiff's participation in Brown.  See Petersen v. Utah Dep't of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002) (decisionmaker must be aware of alleged protected activity to give rise to a claim for retaliation); Kendrick v. Penske Transp. Servs., 220 F.3d 1220, 1231 (10th Cir. 2000) (court must consider facts "as they appear[ed] to the person making the decision to terminate plaintiff").  Without evidence giving rise to an inference that Mask was involved in Brown or had knowledge of plaintiff's participation in Brown, this does not constitute protected activity under Title VII.

10

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and Brief in Support (Dkt. # 15) is **granted**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Plaintiffs [sic] Objection to Defendants [sic] Reply in Support of Motion to Dismiss or in the Alternative for Summary Judgement [sic] and Brief in Support (Dkt. # 24) and Redacted Plaintiffs [sic] Objection to Defendants [sic] Reply in Support of Motion to Dismiss or in the Alternative for Summary Judgement [sic] and Brief in support; Amended (Dkt. # 25) are **stricken**.

**DATED** this 10th day of March, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT